### ZEISS et al. v. BRENHAM PRODUCTION CREDIT ASS'N.

No. 3089.

Court of Civil Appeals of Texas. Waco.

May 14, 1953.

Rehearing Denied June 18, 1953.

W. J. Embrey, Brenham, for appellants.
Richard Spinn, Brenham, for appellee.

McDONALD, Chief Justice.

This is a suit brought by the appellee, Brenham Production Credit Association, against the appellant, the City of Brenham, to declare void the 1951 tax asssessment made by the City Tax Equalization Board against the appellee Production Credit Association, and to enjoin the levy and collection of taxes based on said assessment. Trial was before the court without a jury.

The pertinent facts are: *1)* Brenham Production Credit Association was chartered in 1934 as an Agricultural Credit Cooperative under the provisions of Chapter 7, Title 12, § 1131d of the U.S.C.A. to make loans to farmers for agricultural purposes, and to borrow and rediscount notes in Washington and four adjoining counties. Its principal office is in Brenham, Texas. *2)* The Federal Government through its agency, the Production Credit Corporation, originally invested $120,000 in the stock of the Association. A farmer in making a loan from the Association was required to purchase stock in the Association in the amount of 5% of the loan he was making. When he repaid his loan he could resell his stock to the Association or keep it, at his own option. Out of the profits of the Association, the $120,000 stock owned by the Federal Government was completely repaid, or "retired" prior to 1 January 1951, so that on that date the Association was completely owned by *individual* members of the Association. *3)* On 31 December 1950 there was $120,810 Capital Stock and $72,722.21 accumulated earnings or surplus—all of which was owned by individual members of the Association, some of whom lived in Brenham, but most of whom lived elsewhere. *4)* The Association rendered for taxation for

1951 only the following: "Office fixtures ...$700; Automobile...$450." *5)* The City of Brenham, through its Board of Tax Equalization, prepared an assessment against the Association for 1951 showing: $193,530 Capital Stock and Surplus with a $5,000 reduction for bad debts, leaving a $188,530 basis for assessment. The assessment for tax purposes was ½ of the basis, or $94,260 less the $1,150 for the fixtures and car rendered by the Association, making an assessment value of $93,110.

The Trial Court concluded as a matter of law that the Brenham Production Credit Association was not a bank and did not enjoy banking privileges, and that under the facts, the assessment by the City of Brenham was illegal. The Trial Court rendered judgment that the assessment was void and enjoined appellee city from collecting the 1951 taxes based on the assessment.

Appellant appeals on three points, the principal contention in which is that the Trial Court erred in setting aside and declaring void the tax assessment of the City of Brenham against appellee Association. The city avers that the assessment was made on the same basis as assessments against all other banking institutions and financial associations in the city.

The *all important question* involved on this appeal is whether the Capital Stock and Surplus of a Production Credit Association organized under Chapter 7, Title 12, § 1131d, U.S.C.A., is subject to taxation by the city in which it has its principal office, after it has repaid or "retired" all money invested in it by the Federal Government and its agencies, and after it becomes completely owned by individuals.

Section 1131d, Title 12, Chapter 7, U.S. C.A., is entitled "Production Credit Associations" and authorizes the organization and chartering of same by 10 or more farmers desiring to borrow money under the provisions of the section.

Section 1138c, Title 12, Chapter 7, U.S. C.A., provides that Production Credit Associations organized under this Chapter shall be deemed to be instrumentalities of the United States and as such shall be exempt from all taxation by the United States, State, or local taxing authority; *but that the exemption provided herein shall not apply with respect to any Production Credit Association after the stock held in it by the United States or any of its Agencies has been retired.*

It is clear that as long as the United States or any of its Agencies maintained ownership of *any* of the stock of the Brenham Production Credit Association that its Capital and Surplus was exempt from taxation by the City of Brenham. However, when the stock owned by the United States or its Agencies has been retired, as in case at bar, the tax exemption comes to an end and the Capital Stock and Surplus becomes subject to taxation, in keeping with whatever species of Corporation or Association that a Production Credit Association actually is for tax purposes.

The undisputed facts reflect that the Brenham Production Credit Association is an Agricultural Credit Cooperative; that it makes loans to farmers for general agricultural purposes; that it borrows from and rediscounts its notes in a specified manner with the Federal Intermediate Credit Bank of Houston. The Association has no "stock of goods" in the sense that a mercantile corporation does. Its only stock in trade is money, notes and securities.

We believe that the above enumerated characteristics are such as to require that the Association be taxed as a banking institution or financial association.

Our Courts have heretofore held that a Federal Land Bank, under analogous conditions, is subject to local taxation. First Trust Joint Stock Land Bank v. City of Dallas, Tex.Civ.App., 167 S.W.2d 783, Writ Ref. A Federal Land Bank and a Production Credit Association operate on the same basis generally; both are organized under the same Chapter of the Federal Banking Laws; Land Banks make long term loans on real estate; Production Credit Associations make short term loans on live stock and agricultural security. Both are owned by individuals, though organized and chartered under Federal Law with initial assistance from the Federal Government in the form of stock purchases, which can be

later repurchased or retired by the Bank or Association.

It is therefore our view that a Production Credit Association, once it has completely retired all stock owned by the Federal Government or its agencies becomes subject to State and local taxation in the same manner as other banking institutions.

Article 7166, Texas Revised Civil Statutes, provides that every banking corporation doing business in this state shall, in the city in which it is located, render its real estate to the Tax Assessor at the time and in the manner required of individuals. *At the time of making such rendition the President or some other officer shall file with said Assessor a sworn statement showing the number and amount of the shares of said bank, the name and residence of each shareholder, and the number of shares owned by him. Every shareholder of said Bank shall, in the city or town where said Bank is located, render at their actual value to the Tax Assessor all shares owned by him; and in case of his failure to do so, the Assessor shall assess such unrendered shares as other unrendered property. It further provides that the taxes due on the shares shall be a lien thereon, and that the bank cannot transfer any shares on its books, if the owner is in default in the payments of taxes thereon.*

■■ The shares of stock were taxable at Brenham, Texas, the City of the principal offices of the Brenham Production Credit Association. The Brenham Production Credit Association was under a *statutory duty* to file a sworn statement with the Tax Assessor showing the names of stockholders, their residence and the number and value of shares owned by each, so that the shares of stock could be assessed against their owners. This the officers of the Production Credit Association failed and refused to do. While in this situation a preferable course of action for the City of Brenham to have followed would have been to assess the Capital Stock and Surplus as unrendered property,—but since the Production Credit Association violated its statutory duty to file a list of stockholders, we still feel that the assessment as made must stand—*not* against the Brenham Pro-

duction Credit Association, itself, in its own corporate capacity *but* rather against it as agent for the individual stockholders, who own the stock of the Association.

We believe that the Trial Court's conclusions of law are erroneous and that the assessment made by the City of Brenham, under the facts in this case, is a valid assessment against the Brenham Production Credit Association in the capacity as agent for the various shareholders, and that the action of the trial court in enjoining the City of Brenham from collecting taxes based on the assessment was error.

Accordingly the judgment of the Trial Court is reversed and rendered in accordance with this opinion.

TIREY, J., took no part in the consideration and disposition of this case because of illness.